IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

BARRY HAYWOOD, JR.,

                              Plaintiff,          Civil Action No.
                                                  9:18-CV-01097 (MAD/DEP)

        v.

FULLER, Correction Officer; Mid-State
Correctional Facility, *et al.*,[1]

                              Defendants.

_____

APPEARANCES:                                      OF COUNSEL:

FOR PLAINTIFF:

**[last known address]**
BARRY HAYWOOD JR., *Pro Se*
18-R-1006
Mid-State Correctional Facility
P.O. Box 2500
Marcy, NY 13403

FOR DEFENDANTS:

HON. LETITIA A. JAMES                             NICHOLAS LUKE ZAPP, ESQ.
New York State Attorney General                  Assistant Attorney General
The Capitol
Albany, NY 12224

_____

[1]     According to documents executed by defendants' counsel, the defendant identified as "Sergeant Hart" is "Robert Hart," the defendant identified as "J. Denny" is "Jessica Denny," and the defendant identified as "Fuller" is "Jeff Fuller." Dkt. Nos. 10-12. Accordingly, the clerk of the court will respectfully be directed to modify the court's records to reflect the proper spellings of the names of defendants.

DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

## ORDER, REPORT, AND RECOMMENDATION

This is a civil rights action brought pursuant to 42 U.S.C. § 1983 by *pro se* plaintiff Barry Haywood, Jr., a former New York State prison inmate who was released from custody on February 28, 2019, and whose present location is not currently known to the court. In his complaint, plaintiff asserts that three corrections officers employed by the New York State Department of Corrections and Community Supervision ("DOCCS") violated his constitutional rights arising under the Eighth Amendment, based upon an incident that occurred on August 21, 2018 at the prison in which he was confined on that date.

Currently pending before the court is a motion brought by defendants seeking the entry of summary judgment based solely upon the grounds that plaintiff did not administratively exhaust his Eighth Amendment claim prior to bringing suit. For the reasons set forth below, I recommend that defendants' motion for summary judgment be granted. In the event the court disagrees with this recommendation, however, I recommend in the alternative that the complaint be dismissed due to plaintiff's failure to comply with the court's local rules.

I.     BACKGROUND[2]

Plaintiff is a former New York State prison inmate who, at the times relevant to the claims in this action, was confined to the Mid-State Correctional Facility ("Mid-State"), located in Marcy, New York. *See generally* Dkt. No. 1. Between August 13, 2018 and August 19, 2018, plaintiff attended a three-day facility orientation at Mid-State where the grievance policies and procedures were explained to him. Dkt. No. 17-3 at 2, 6.

On August 21, 2018, at approximately 1:30 p.m., plaintiff was allegedly assaulted by defendants Robert Hart, Jessica Denny, and Jeff Fuller, three corrections officers assigned to Mid-State. Dkt. No. 1 at 5. According to his complaint, while he was "discussing [d]ue [p]rocess" with defendant Denny, defendants Fuller and Hart threw plaintiff onto a wall. *Id.* Defendant Fuller then proceeded to kick plaintiff's legs out from beneath

---

[2]     Defendants' motion papers properly included a statement of undisputed material facts, as required under Local 7.1(a)(3) of this court. *See* Dkt. No. 17-2. However, given plaintiff's release from custody two weeks prior to the filing of defendants' motion, it is exceedingly unlikely that plaintiff was made aware of the consequences of his failure to properly respond to defendants' Local Rule 7.1 Statement. *See Travelers Indem. Co. of Ill. v. Hunter Fan Co.*, No. 99-CV-4863, 2002 WL 109567, at *7 (S.D.N.Y. Jan. 28, 2002) (citing *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001)) (indicating that a court has broad discretion whether to overlook a party's failure to comply with its local rules). Accordingly, the following recitation is derived from the record now before the court, with all inferences drawn and ambiguities resolved in the non-movant's favor, and without regarding to defendants' uncontested statement of material facts. *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003).

him, which caused plaintiff to strike his head against the wall and lose consciousness. *Id.* When plaintiff regained consciousness, defendant Fuller was kicking his genitals. *Id.* Defendants then continued to assault plaintiff. *Id.*

In his complaint, plaintiff seeks recovery compensatory and punitive damages. [Dkt. No. 1]. at 6.

## II.     PROCEDURAL HISTORY

Plaintiff commenced this action on September 13, 2018, with the filing of a complaint and accompanying application for leave to proceed *in forma pauperis* ("IFP"). Dkt. Nos. 1, 2, 3. On September 14, 2018, District Judge Mae A. D'Agostino issued an order administratively closing the action and denying plaintiff's IFP application as incomplete. [Dkt. No. 4]. In that decision, plaintiff was directed to either file a proper IFP application, signed and certified by an appropriate official at the facility, or pay the full $400.00 filing fee, within thirty days of the date of the order. *Id*.

Plaintiff filed a second, completed application for IFP status, together with an inmate authorization form, on March 13, 2017. [Dkt. No. 5]. Judge D'Agostino thereafter reopened the action and issued a decision and order granting plaintiff's IFP application. [Dkt. No. 8]. In that same decision and order, Judge D'Agostino dismissed certain of plaintiff's claims for failure to

state a claim upon which relief may be granted, with the remaining claims surviving the court's initial review pursuant to 28 U.S.C. §§ 1915(e) and 1915A. *See generally id*. Significantly, in that decision, Judge D'Agostino used instructions to plaintiff, including requiring him "**to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any changes in his address; their failure to do so will result in the dismissal of his action.**" *Id.* at 20 (emphasis in original).

On March 15, 2019, prior to answering plaintiff's complaint, defendants filed the pending motion for summary judgment seeking dismissal of plaintiff's complaint in light of his failure to exhaust available administrative remedies.[3] Dkt. No. 17. In a notation in their memorandum

---

[3]    While a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure automatically extends the time under which a defendant must file an answer, there is no similar rule governing a defendant's obligation to answer a complaint when he files a pre-answer motion for summary judgment pursuant to Rule 56. *Compare* Fed. R. Civ. P. 12(a)(4), *with* Fed. R. Civ. P. 56; *see also* 10A Alan Wright *et al.*, *Federal Practice & Procedure* § 2718 (4th ed.). Most courts that have determined that Rule 12(a)(4) operates by analogy to a defendant that has filed a pre-answer summary judgment motion and, therefore, have declined to find a defendant in default by failing to file an answer until after disposition of the motion. *See Rashidi v. Albright*, 818 F. Supp. 1354, 1356 (D. Nev. 1993) ("Although Rule 12 does not specifically allow for a summary judgment motion to toll the running of the period within which a responsive pleading must be filed, by analogy the language would seem to apply[.]"); *but see Poe v. Cristina Copper Mines, Inc.*, 15 F.R.D. 85, 87 (D. Del. 1953) (finding that the "extension of time to file a responsive pleading until determination of a motion for summary judgment under Rule 56 is not a definite and fixed right but a matter to be granted or denied under Rule 6(b)").

In this instance, defendants requested a stay of the deadline to answer, Dkt. No. 17-1 at 3, which I granted in an exercise of my discretion. Dkt. No. 19. Accordingly, defendants' time to answer has been stayed until fourteen days after a final determination is issued with respect to defendants' motion in the event that the action

of law, defendants observed that plaintiff appeared to have been released from Mid-State on February 28, 2019. Dkt. No. 17-1 at 3. Because plaintiff is presumably unaware of the pending motion, plaintiff has not responded in opposition to it.

On March 15, 2019, the court attempted to notify plaintiff that his deadline to respond to the pending motion was April 8, 2019. Dkt. No. 18. That notification, however, was returned to the court on March 25, 2019, with the envelope having been marked "Return to Sender – Refused – Unable to Forward[.]" Dkt. No. 20. In addition, a separate text order notification to plaintiff was also returned to the court on March 25, 2019, with the envelope having also been marked "Return to Sender – Refused – Unable to Forward[.]" Dkt. No. 21.

Defendants' motion, which is now ripe for determination, has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed. R. Civ. P. 72(b).

---

survives. Dkt. No. 19.

III.    <u>DISCUSSION</u>

A.    <u>Legal Standard Governing Motions for Summary Judgment</u>

Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure. Under that provision, the entry of summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004). A fact is "material" for purposes of this inquiry if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of N.Y.*, 426 F.3d 549, 553 (2d Cir. 2005). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

A party moving for summary judgment bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue—the failure to meet this burden warrants denial of the motion. *Anderson*, 477 U.S. at 250 n.4; *Sec. Ins. Co. of Hartford*, 391 F.3d at 83. In the event this

initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material dispute of fact for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences, in a light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998). The entry of summary judgment is justified only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party. *Bldg. Trades Emp'rs' Educ. Ass'n v. McGowan*, 311 F.3d 501, 507-08 (2d Cir. 2002); *see also Anderson,* 477 U.S. at 250 (finding summary judgment appropriate only when "there can be but one reasonable conclusion as to the verdict").

B.   Exhaustion of Administrative Remedies

The Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), which imposes several restrictions on the ability of prisoners to maintain federal civil rights actions, expressly provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such

administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) (analyzing whether prisoner-plaintiff exhausted his administrative remedies pursuant to the PLRA's exhaustion requirement). Section 1997e(a)'s exhaustion provision is mandatory and applies to all inmate lawsuits regarding the conditions of their confinement. *Ross*, 136 S. Ct. at 1856; *Woodford v. Ngo*, 548 U.S. 81, 84 (2006); *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002); *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016). In the event a defendant establishes that the inmate-plaintiff failed to fully comply with the administrative process prior to commencing an action in federal court, the plaintiff's complaint is subject to dismissal. *See Woodford*, 548 U.S. at 93 ("[W]e are persuaded that the PLRA exhaustion requirement requires proper exhaustion."); *see also Wilson v. McKenna*, 661 F. App'x 750, 752 (2d Cir. 2016). "Proper exhaustion" requires a plaintiff to procedurally exhaust his claims by "compl[ying] with the system's critical procedural rules." *Woodford*, 548 U.S. at 95; *accord Macias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007).[4]

---

[4]     While placing prison officials on notice of a grievance through less formal channels may constitute claim exhaustion " 'in a substantive sense,' " an inmate plaintiff nonetheless must meet the procedural requirement of exhausting his available administrative remedies within the appropriate grievance construct in order to satisfy the PLRA. *Macias*, 495 F.3d at 43 (quoting *Johnson v. Testman*, 380 F.3d 691, 697-98

In New York, the DOCCS has instituted a grievance procedure, designated as the Inmate Grievance Program ("IGP"), for use by prison inmates to lodge complaints regarding the conditions of their confinement. *Williams*, 829 F.3d at 119. The IGP is comprised of three steps that inmates must satisfy when they have a grievance regarding prison conditions. 7 N.Y.C.R.R. §§ 701.1, 701.5; *Williams*, 829 F.3d at 119. The IGP requires that an inmate first file a grievance with "the clerk" within twenty-one days of the alleged occurrence giving rise to his complaint. 7 N.Y.C.R.R. § 701.5(a)(1). "The complaint may only be filed at the facility where the inmate is housed even if it pertains to another facility." *Id.* Representatives of the inmate grievance resolution committee ("IGRC")[5] have up to sixteen days after the grievance is filed to informally resolve the issue. 7 N.Y.C.R.R. § 701.5(b)(1). If there is no such informal resolution, then the full IGRC conducts a hearing within sixteen days after receipt of the grievance. 7 N.Y.C.R.R. § 701.5(b)(2).

A grievant may then appeal the IGRC's decision to the facility's superintendent within seven days after receipt of the IGRC's written

_____

(2d Cir. 2004) (emphasis omitted)).

[5]    The IGRC is comprised of "two voting inmates, two voting staff members, and a non-voting chairperson." 7 N.Y.C.R.R. § 701.4(a).

decision. 7 N.Y.C.R.R. § 701.5(c). The superintendent must issue a written decision within a certain number of days after receipt of the grievant's appeal.[6] 7 N.Y.C.R.R. § 701.5(c)(3)(i), (ii).

The third and final step of the IGP involves an appeal to the DOCCS Central Office Review Committee ("CORC"), which must be taken within seven days after an inmate receives the superintendent's written decision. 7 N.Y.C.R.R. § 701.5(d)(1)(i). The CORC is required to render a written decision within thirty days of receipt of the appeal. 7 N.Y.C.R.R. § 701.5(d)(2)(i), (ii).

Where an inmate's grievance complains of employee harassment, the grievance is forwarded directly to the superintendent, bypassing the IGRC review. 7 N.Y.C.R.R. § 701.8(b), (c). The superintendent then has twenty-five days from the date of its receipt to render a decision. 7 N.Y.C.R.R. § 701.8(g). An inmate may appeal the superintendent's decision to the CORC within seven days of its receipt. 7 N.Y.C.R.R. § 701.8(h).

As can be seen, at each step of the IGP process, a decision must be rendered within a specified time period. 7 N.Y.C.R.R. § 701.5. Where the

---

[6]     Depending on the type of matter complained of by the inmate, the superintendent has either seven or twenty days after receipt of the appeal to issue a decision. 7 N.Y.C.R.R. § 701.5(c)(3)(i), (ii).

IGRC and/or superintendent do not timely respond, an inmate is permitted to appeal "to the next step." 7 N.Y.C.R.R. § 701.6(g)(2). Generally, if a plaintiff fails to follow each of the required three steps of the above-described IGP prior to commencing litigation, he has failed to exhaust his administrative remedies as required under the PLRA. *See Ruggerio v. Cty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) ("[T]he PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits." (internal quotation marks omitted)).

While the PLRA mandates exhaustion of available administrative remedies, it also "contains its own, textual exception to mandatory exhaustion." *Ross*, 136 S. Ct. at 1858. More specifically, section 1997e(a) provides that only those administrative remedies that "are available" must first be exhausted. 42 U.S.C. § 1997e(a); *see also Ross*, 136 S. Ct. at 1858 ("[T]he exhaustion requirement hinges on the availability of administrative remedies." (internal quotation marks and alteration omitted)). In the PLRA context, the Supreme Court has determined that "availability" means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Ross*, 136 S. Ct. at 1859 (internal quotation

12

marks omitted).

In *Ross*, the Supreme Court identified three circumstances in which a court could find that internal administrative remedies are not available to prisoners under the PLRA.[7] *Ross*, 136 S. Ct. at 1859-60. Under the first, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859. In addition, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id*. The Court explained that, "[i]n this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* The third scenario in which administrative remedies are deemed unavailable to prisoners is when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

In his complaint, plaintiff alleges that although he filed a grievance, he did not receive a response from the Mid-State's "IGRC's cordinator [sic] or Grievance Central Office in Albany[.]" Dkt. No. 1 at 5. Plaintiff also

---

[7]      According to the Second Circuit, "the three circumstances discussed in *Ross* do not appear to be exhaustive[.]" *Williams*, 829 F.3d at 123 n.2.

alleges that the Office of Special Investigations for the DOCCS failed to respond to his "reported incident of abuse." *Id.* Plaintiff makes no other allegations in his complaint with respect to his endeavor to exhaust his administrative remedies prior to commencing this action. *See generally id.*

I note, initially, that to the extent plaintiff may suggest that an informal complaint to the Office of Special Investigations constitutes proper exhaustion, such an argument would undoubtedly be misplaced. It is well-established that any informal resolution or relief outside of the administrative procedures does not satisfy exhaustion requirements in the Second Circuit. *See, e.g., Macias*, 495 F.3d at 43; *Day v. Chaplin*, 354 F. App'x 472, 474 (2d Cir. 2009) (summary order) (noting that informal letters sent to prison officials "do not conform to the proper administrative remedy procedures"). As a result, any complaint to the Office of Special Investigations for the DOCCS would be insufficient to satisfy plaintiff's exhaustion requirement.

With respect to plaintiff's attempts to exhaust his administrative remedies through the proper channels of the IGP, defendants have submitted a declaration from Christopher G. Tapia, the IGP Supervisor for Mid-State, in support of their motion for summary judgment. Dkt. No. 17-3. According to Mr. Tapia, a search of the records maintained by his office

revealed that plaintiff did in fact file a grievance, dated August 23, 2018 and assigned grievance number MS-23650-18, concerning the incident alleged his complaint.[8] [Dkt. No. 17-3 at 3](), 8. Because plaintiff's grievance involved allegations of employee harassment, it was forwarded directly to the Mid-State's superintendent for review and response. *Id.* at 3. The superintendent's resulting determination, dated November 29, 2018, was mailed to plaintiff on December 7, 2018. *Id.* at 3, 10. There is no record of plaintiff having appealed the superintendent's determination to the CORC. *Id.* at 3; [Dkt. No. 17-4 at 4](), 6-7.

Defendants have also submitted the declaration of Rachel Seguin, the Assistant Director of the DOCCS IGP and custodian of records maintained by the CORC. [Dkt. No. 17-4](). In response to a letter she received from plaintiff, Ms. Seguin explained the following to plaintiff by letter dated September 6, 2018:

> [This] is in response to your August 23, 2018 correspondence.
>
> Contact with the IGP Supervisor at Mid-State Correctional Facility reveals that you have filed one grievance in 2018, to date, and that he has not received any correspondence from you regarding your complaints. It is noted that MS-23650-18, alleging staff misconduct, is currently pending a

---

[8]    That grievance contains no allegations with respect to defendant Hart. [Dkt. No. 17-3 at 8]().

Superintendent's response. . . .

Directive #4040 provides inmates with an orderly, fair, simple and expeditious method of resolving grievances pursuant to the Correction Law, and makes no provision for an inmate to refer grievances directly to Central Office. Therefore, your documents are being returned to you and we will not retain a copy in this office.

You are advised to address specific grievance concerns directly to the IGP Supervisor and security matters to area supervisory staff for the most expeditious means of resolution.

*Id.* at 4, 9. Although Ms. Seguin's declaration does not disclose the precise nature of plaintiff's correspondence, it cannot be construed as an effort to appeal to the CORC since at the time of her response, the superintendent had not yet decided plaintiff's grievance. *Id.*

In light of both Tapia's and Seguin's declarations, I conclude that plaintiff failed to properly appeal his grievance to the CORC as required by the IGP. *See, e.g.*, *Ruggiero v. Cty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) ("[T]he PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits.)" (internal quotation marks and emphasis omitted)). I note, moreover, that according to the record now before the court, plaintiff prematurely commenced this action on September 13, 2018, inasmuch as the twenty-five day timeframe within

which the superintendent had to render a determination on plaintiff's harassment grievance filed on August 23, 2018 had not yet elapsed. *See* 7 N.Y.C.R.R. § 701.8(f). Accordingly, I recommend that defendants' motion be granted, and that plaintiff's complaint be dismissed based on his failure to exhaust available administrative remedies prior to commencing this action.

C.    Plaintiff's Failure to Update His Address

As an additional basis for dismissal of plaintiff's complaint, I offer the following analysis based upon his failure to notify the court of his change of address following his release from prison. For reasons that are self-evident, this court's local rules require that "[a]ll attorneys of record and *pro se* litigants immediately notify the Court of any change of address." N.D.N.Y. L.R. 10.1(c)(2) (emphasis omitted). As one court has observed with respect to this requirement,

> [i]t is neither feasible nor legally required that the clerks of the district courts undertake independently to maintain current addresses on all parties to pending actions. It is incumbent upon litigants to inform the clerk of address changes, for it is manifest that communications between the clerk and the parties or their counsel will be conducted principally by mail. In addition to keeping the clerk informed of any change of address, parties are obliged to make timely status inquiries. Address changes normally would be reflected by those inquiries if made in writing.

17

*Dansby v. Albany Cty. Corr. Facility Staff*, No. 95-CV-1525, 1996 WL

172699, at *1 (N.D.N.Y. Apr. 10, 1996) (Pooler, J.) (quoting *Perkins v.*

*King,* No. 84-3310, 1985 U.S. App. LEXIS 31736, at *4 (5th Cir. Mar. 19,

1985)).[9]  Plaintiff was expressly informed of this requirement when he was

provided with Judge D'Agostino's initial decision and order dated

November 27, 2018. Dkt. No. 8 at 20 ("**Plaintiff is also required to**

**promptly notify the Clerk's Office and all parties or their counsel, in**

**writing, of any changes in his address; their failure to do so will**

**result in the dismissal of his action.**" (emphasis in original)). Despite

this pointed warning, plaintiff has been released from custody of the

DOCCS, and has failed to contact the court, or defendants' counsel, and

provide his new address.

Rule 41(b) of the Federal Rules of Civil Procedure provides that a

court may, in its discretion, order dismissal of an action based on a

plaintiff's failure to prosecute or comply with an order of the court.[10]  Fed.

---

[9]     Copies of all unreported decisions have been appended for the convenience of
the *pro se* plaintiff.

[10]     Although Rule 41(b) grants a defendant leave to move for dismissal based on a
plaintiff's failure to prosecute or comply with a court order (rather than grant the court
explicit authority to dismiss *sua sponte*), "courts retain the 'inherent power' to *sua
sponte* 'clear their calendars of cases that have remained dormant because of the
inaction or dilatoriness of the parties seeking relief.' " *Rodriguez*, 2007 WL 4246443, at
*2 (quoting *Link*, 370 U.S. at 630). Indeed, the local rules of this court recognize this

R. Civ. P. 41(b); *Baptiste v. Sommers*, 768 F.3d 212, 216 (2d Cir. 2014); *Rodriguez v. Goord*, No. 04-CV-0358, 2007 WL 4246443, at *2 (N.D.N.Y. Nov. 27, 2007) (Scullin, J. *adopting report and recommendation by* Lowe, M.J.). That discretion should be exercised when necessary to "achieve the orderly and expeditious disposition of cases." *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962). In addition, it should be exercised with caution and restraint because dismissal is a particularly harsh remedy, especially when invoked against a *pro se* plaintiff. *Baptiste*, 768 F.3d at 216-17.

A determination of whether to dismiss an action pursuant to Rule 41(b) is informed by consideration of five specific factors, including (1) the duration of the plaintiff's failure to comply with court orders; (2) whether the plaintiff was on notice that failure to comply would result in dismissal; (3) whether the defendant is likely to be prejudiced by further delay in the proceedings; (4) a balancing of the court's interest in managing its docket with the plaintiff's interest in a fair chance to be heard; and (5) whether the imposition of sanctions less drastic than dismissal is appropriate. *Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996) (citing *Jackson v. City of New York*,

---

authority and mandate that the court exercise it under certain circumstances. *See, e.g.*, N.D.N.Y. L.R. 41.2(a).

22 F.3d 71, 74 (2d Cir. 1994); *Alvarez v. Simmons Mkt. Research Bureau, Inc.*, 839 F.2d 930, 932 (2d Cir. 1988))*; see also Shannon v. Gen. Elec. Co.*, 186 F.3d 186, 193-94 (2d Cir. 1999).

Based upon careful consideration of the foregoing relevant factors, I conclude that dismissal of plaintiff's complaint at this juncture is warranted. The inability of the court to communicate with plaintiff is due solely to his failure to provide the court or opposing counsel with his new address, a failure that dates back to at least February 28, 2019. While only a couple of months have elapsed since that time, and the duration of plaintiff's failure to proceed in this action is therefore relatively modest, its effect on the litigation is nonetheless substantial, and there is no end to plaintiff's inaction in sight. As was previously noted, plaintiff was expressly placed on notice that his failure to provide an adequate address would result in dismissal of his case. Dkt. No. 8 at 20.

Despite plaintiff's awareness of his responsibility, he has failed to provide an updated address to the court. Given plaintiff's manifest disinterest in pursuing his claims in this action, I find that the need to alleviate congestion on the court's docket and defendants' interest in defending against the claims asserted by plaintiff outweigh his right to receive a further opportunity to be heard in this matter. As required, I have

considered less-drastic sanctions, but reject them as ineffective. While the court could potentially issue an order reprimanding plaintiff for his conduct, those efforts would be futile, given that such an order would, in all likelihood, never reach plaintiff due to his failure to provide the court with a current address following his release from custody.

IV.    SUMMARY, ORDER, AND RECOMMENDATION

Plaintiff's complaint alleges that defendants violated his right under the Eighth Amendment to be free of cruel and unusual punishment when two defendants assaulted plaintiff, while the other defendant failed to prevent the assault. Prior to filing his complaint, however, plaintiff failed to exhaust the internal administrative remedies available to him by the DOCCS IGP. Accordingly, it is hereby respectfully

RECOMMENDED that defendants' motion for summary judgment (Dkt. No. 17) be GRANTED, and that plaintiff's complaint (Dkt. No. 1) be DISMISSED in its entirety.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report.[11] FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE

---

[11]    If you are proceeding *pro se* and are served with this order, report, and

APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993). It is hereby

ORDERED that the clerk is respectfully directed to modify the court's records to change reference in the court's records to reflect the full names of the remaining defendants as "Robert Hart"; "Jessica Denny"; and "Jeff Fuller"; as set forth in footnote number one; and it is further

ORDERED that the clerk of the court serve a copy of this order, report, and recommendation upon the parties in accordance with this court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:    April 16, 2019
            Syracuse, New York

---

recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order, report, and recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

Dansby v. Albany County Correctional Facility Staff, Not Reported in F.Supp. (1996)

1996 WL 172699

1996 WL 172699
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kevin DANSBY, Plaintiff,

v.

ALBANY COUNTY CORRECTIONAL
FACILITY STAFF, Defendant.

No. 95-CV-1525 (RSP/RWS).
|
April 10, 1996.

**Attorneys and Law Firms**

Kevin Dansby pro se.

*ORDER*

POOLER, District Judge.

**\*1** In an order and report-recommendation dated December 8, 1995, Magistrate Judge Smith noted that Dansby had not signed the complaint he filed to commence this action. Magistrate Judge Smith directed Dansby to submit an affidavit which contained all of the representations delineated in Fed.R.Civ.P. 11(b) with respect to his complaint. The magistrate judge recommended dismissal of Dansby's action if Dansby failed to comply with the terms of the report-recommendation within forty-five (45) days from the date of the service.

On December 12, 1995, a copy of the report-recommendation was served on Dansby by regular mail to his last known address, the Albany County Jail. On December 22, 1995, the jail returned the report-recommendation marked "Return to Sender -- No Forwarding Order on File."

Rule 41(b) of the Federal Rules of Civil Procedure provides that a court may, in its discretion, dismiss an action based upon the failure of a plaintiff to prosecute an action or comply with any order of the court. Link v. Wabash R.R. Co., 370 U.S. 626, 629 (1962). The district court may exercise its discretion to dismiss when necessary to achieve orderly and expeditious disposition of cases.

See Rodriguez v. Walsh, 1994 W.L. 9688, at \*1 (S.D.N.Y. 1994).

Moreover, a plaintiff has the duty to inform the Court of any address changes. As the Fifth Circuit has stated:

> It is neither feasible nor legally required that the clerks of the district courts undertake independently to maintain current addresses on all parties to pending actions. It is incumbent upon litigants to inform the clerk of address changes, for it is manifest that communications between the clerk and the parties or their counsel will be conducted principally by mail. In addition to keeping the clerk informed of any change of address, parties are obliged to make timely status inquiries. Address changes normally would be reflected by those inquiries if made in writing.

Perkins v. King, No. 84-3310, slip op. at 4 (5th Cir. May 19, 1985) (citing Williams v. New Orleans Public Service, Inc., 728 F.2d 730 (5th Cir. 1984); Wilson v. Atwood Group, 725 F.2d 255 (5th Cir. 1984) (en banc)); see Wehlen v. Foti et al., 1987 W.L. 8039, at \*1-2 (E.D.La. 1987); see generally Rule 41.2(b) of the Local Rules of Practice for the Northern District of New York.

This matter cannot proceed without Dansby filing the affidavit described above or notifying the court of his current address. Therefore, it is hereby

ORDERED, that this action is dismissed. See Rules 5.4(b)(4) and 41.2(b) of the Local Rules of Practice for the Northern District of New York, and it is further

ORDERED, that the Clerk serve a copy of this Order on the plaintiff by regular mail at his last known address.

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp., 1996 WL 172699

**End of Document**                                                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

2007 WL 4246443
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Jose RODRIGUEZ, Plaintiff,
v.
Glen S. GOORD, et al, Defendants.

No. 9:04-CV-0358 (FJS/GHL).
|
Nov. 27, 2007.

**Attorneys and Law Firms**

Jose Rodriguez, Willard, NY, pro se.

Andrew M. Cuomo, Attorney General of the State of New York, David L. Cochran, Esq., Assistant Attorney General, of Counsel, Albany, NY, for Defendants.

## *DECISION AND ORDER*

FREDERICK J. SCULLIN, Senior District Judge.

 **\*1** The above-captioned matter having been presented to me by the Report-Recommendation of Magistrate Judge George H. Lowe filed November 6, 2007, and the Court having reviewed the Report-Recommendation and the entire file in this matter, and no objections to said Report-Recommendation having been filed, the Court hereby

**ORDERS,** that Magistrate Judge Lowe's November 6, 2007 Report-Recommendation is **ACCEPTED** in its entirety for the reasons stated therein; and the Court further

**ORDERS,** that Defendants' motion, pursuant to Local Rule 41.2(b), to dismiss for Plaintiff's failure to provide notice to the Court of a change of address, is **GRANTED;** and the Court further

**ORDERS,** that the Clerk of the Court enter judgment in favor of the Defendants and close this case.

**IT IS SO ORDERED.**

## *REPORT-RECOMMENDATION*

GEORGE H. LOWE, United States Magistrate Judge.

This *pro se* prisoner civil rights action, filed pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable Frederick J. Scullin, Jr., Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c) of the Local Rules of Practice for this Court. Generally, Jose Rodriguez ("Plaintiff") alleges that, while he was an inmate at Oneida Correctional Facility in 2003 and 2004, ten employees of the New York State Department of Correctional Services ("Defendants") were deliberately indifferent to his serious medical needs, and subjected him to cruel and unusual prison conditions, in violation of the Eighth Amendment. (Dkt. No. 27 [Plf .'s Am. Compl.].) Currently pending is Defendants' motion to dismiss for failure to provide notice to the Court of a change of address, pursuant to Local Rule 41.2(b) of the Local Rules of Practice for this Court. (Dkt. No. 86.) Plaintiff has not opposed the motion, despite having been given more than six weeks in which to do so. Under the circumstances, I recommend that (1) Defendants' motion to dismiss be granted, and (2) in the alternative, the Court exercise its inherent authority to *sua sponte* dismiss Plaintiff's Amended Complaint for failure to prosecute and/or failure to comply with an Order of the Court.

## I. DEFENDANTS' MOTION TO DISMISS

Under the Local Rules of Practice for this Court, Plaintiff has effectively "consented" to the granting of Defendants' motion to dismiss, since (1) he failed to oppose the motion, (2) the motion was properly filed, and (3) Defendants have, through the motion, met their burden of demonstrating entitlement to the relief requested in the motion. L.R. 7.1(b)(3).

In particular, with regard to this last factor (i.e., that Defendants have met their burden of demonstrating entitlement to the relief requested), Defendants argue that their motion to dismiss should be granted because (1) Local Rule 41.2(b) provides that "[f]ailure to notify the Court of a change of address in accordance with [Local Rule] 10.1(b) may result in the dismissal of any pending action," (2) on April 15, 2004, Plaintiff was specifically advised of this rule when (through Dkt. No. 5, at 4) the Court advised Plaintiff that "his failure to [promptly

notify the Clerk's Office and all parties or their counsel of any change in his address] will result in the dismissal of his action," (3) on May 22, 2007, Plaintiff was released from the Willard Drug Treatment Center, (4) since that time, Plaintiff has failed to provide notice to the Court (or Defendants) of his new address, as required by Local Rule 10.1(b)(2), and (5) as a result of this failure, Defendants have been prejudiced in that they have been unable to contact Plaintiff in connection with this litigation (e.g., in order to depose him, as authorized by the Court on May 4, 2007). (Dkt. No. 86, Part 4, at 1-2 [Defs.' Mem. of Law].)

**\*2** Authority exists suggesting that an inquiry into the third factor (i.e., whether a movant has met its "burden to demonstrate entitlement" to dismissal under Local Rule 7.1[b][3] ) is a more limited endeavor than a review of a contested motion to dismiss. [1] Specifically, under such an analysis, the movant's burden of persuasion is lightened such that, in order to succeed, his motion need only be "facially meritorious." [2] Given that Defendants accurately cite the law and facts in their memorandum of law, I find that they have met their lightened burden on their unopposed motion. Moreover, I am confident that I would reach the same conclusion even if their motion were contested.

For these reasons, I recommend that the Court grant Defendants' motion to dismiss.

## II. *SUA SPONTE* DISMISSAL

Even if Defendants have not met their burden on their motion to dismiss, the Court possesses the inherent authority to dismiss Plaintiff's Amended Complaint *sua sponte* under the circumstances. Rule 41 of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a proceeding for (1) failure to prosecute the action and/or (2) failure to comply with the Federal Rules of Civil Procedure or an Order of the Court. Fed.R.Civ.P. 41(b). [3] However, it has long been recognized that, despite Rule 41 (which speaks only of a *motion* to dismiss on the referenced grounds, and not a *sua sponte* order of dismissal on those grounds), courts retain the "inherent power" to *sua sponte* "clear their calendars of cases that have remained dormant because of the inaction or dilatoriness of the parties seeking relief." Link v. Wabash R.R. Co., 370 U.S. 626, 630, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962); *see also Saylor v. Bastedo,* 623 F.2d 230, 238 (2d Cir.1980); *Theilmann v. Rutland Hospital, Inc.,* 455

F.2d 853, 855 (2d Cir.1972). Indeed, Local Rule 41.2(a) not only recognizes this authority but *requires* that it be exercised in appropriate circumstances. *See* N.D.N.Y. L.R. 41.2(a) ("Whenever it appears that the plaintiff has failed to prosecute an action or proceeding diligently, the assigned judge *shall* order it dismissed.") [emphasis added].

### A. Failure to Prosecute

With regard to the first ground for dismissal (a failure to prosecute the action), it is within the trial judge's sound discretion to dismiss for want of prosecution. [4] The Second Circuit has identified five factors that it considers when reviewing a district court's order to dismiss an action for failure to prosecute:

> [1] the duration of the plaintiff's failures, [2] whether plaintiff had received notice that further delays would result in dismissal, [3] whether the defendant is likely to be prejudiced by further delay, [4] whether the district judge has taken care to strike the balance between alleviating court calendar congestion and protecting a party's right to due process and a fair chance to be heard and [5] whether the judge has adequately assessed the efficacy of lesser sanctions. [5]

**\*3** As a general rule, no single one of these five factors is dispositive. [6] However, I note that, with regard to the first factor, Rule 41.2 of the Local Rules of Practice for this Court provides that a "plaintiff's failure to take action for four (4) months shall be presumptive evidence of lack of prosecution." N.D.N.Y. L.R. 41.2(a). In addition, I note that a party's failure to keep the Clerk's Office apprised of his or her current address may also constitute grounds for dismissal under Rule 41(b) of the Federal Rules of Civil Procedure. [7]

Here, I find that, under the circumstances, the above-described factors weigh in favor of dismissal. The duration of Plaintiff's failure is some six-and-a-half months, i.e., since April 22, 2007, the date of the last document that Plaintiff attempted to file with the Court (Dkt. No. 85). Plaintiff received adequate notice (e.g., through the Court's above-referenced Order of April 15, 2004, and Defendants' motion to dismiss) that his failure to litigate this action (e.g., through providing a current address) would result in dismissal. Defendants are likely to be prejudiced by further delays in this proceeding, since

they have been waiting to take Plaintiff's deposition since May 4, 2007. (Dkt. No. 84.) I find that the need to alleviate congestion on the Court's docket outweighs Plaintiff's right to receive a further chance to be heard in this action. [8] Finally, I have considered all less-drastic sanctions and rejected them, largely because they would be futile under the circumstances (e.g., an Order warning or chastising Plaintiff may very well not reach him, due to his failure to provide a current address).

**B. Failure to Comply with Order of Court**

With regard to the second ground for dismissal (a failure to comply with an Order of the Court), the legal standard governing such a dismissal is very similar to the legal standard governing a dismissal for failure to prosecute. "Dismissal ... for failure to comply with an order of the court is a matter committed to the discretion of the district court." [9] The correctness of a dismissal for failure to comply with an order of the court is determined in light of five factors:

> (1) the duration of the plaintiff's failure to comply with the court order, (2) whether plaintiff was on notice that failure to comply would result in dismissal, (3) whether the defendants are likely to be prejudiced by further delay in the proceedings, (4) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard, and (5) whether the judge has adequately considered a sanction less drastic than dismissal. [10]

Here, I find that, under the circumstances, the above-described factors weigh in favor of dismissal for the same reasons as described above in Part II.A. of this Report-Recommendation. I note that the Order that Plaintiff has violated is the Court's Order of April 15, 2004, wherein the Court ordered Plaintiff, *inter alia,* to keep the Clerk's Office apprised of his current address. (Dkt. No. 5, at 4.) Specifically, the Court advised plaintiff that **"[p]laintiff**

*is also required to promptly notify the Clerk's Office and all parties or their counsel of any change in plaintiff's address; his failure to do same will result in the dismissal of this action."* (*Id.*) I note also that, on numerous previous occasions in this action, Plaintiff violated this Order, resulting in delays in the action. (*See* Dkt. Nos. 47, 48, 49, 50, 54, 59, 72, 78, 79 & Dkt. Entry for 12/15/06 [indicating that mail from the Court to Plaintiff was returned as undeliverable].)

**\*4** As a result, I recommend that, should the Court decide to deny Defendants' motion to dismiss, the Court exercise its authority to dismiss Plaintiff's Amended Complaint *sua sponte* for failure to prosecute and/or failure to comply with an Order of the Court.

**ACCORDINGLY,** for the reasons stated above, it is

**RECOMMENDED** that Defendants' motion to dismiss (Dkt. No. 86) be ***GRANTED%;*** and it is further

**RECOMMENDED** that, in the alternative, the Court exercise its inherent authority to ***SUA SPONTE DISMISS*** Plaintiff's Amended Complaint for failure to prosecute and/or failure to comply with an Order of the Court.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15 [2d Cir.1989] ); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e)..

**All Citations**

Not Reported in F.Supp.2d, 2007 WL 4246443

---

Footnotes

1    *See, e.g., Hernandez v. Nash,* 00-CV-1564, 2003 U.S. Dist. LEXIS 16258, at *7-8, 2003 WL 22143709 (N.D.N.Y. Sept. 10, 2003) (Sharpe, M.J.) (before an unopposed motion to dismiss may be granted under Local Rule 7.1[b][3], "the court must review the motion to determine whether it is *facially meritorious* ") [emphasis added; citations omitted]; *Race Safe Sys. v. Indy Racing League,* 251 F.Supp.2d 1106, 1109-10 (N.D.N.Y.2003) (Munson, J.) (reviewing whether record contradicted defendant's arguments, and whether record supported plaintiff's claims, in deciding unopposed motion to dismiss, under Local Rule 7.1[b][3] ); *see also Wilmer v. Torian,* 96-CV-1269, 1997 U.S. Dist. LEXIS 16345, at *2 (N.D.N.Y. Aug. 29, 1997) (Hurd, M .J.) (applying prior version of Rule 7.1 [b][3], but recommending dismissal because of plaintiff's failure to

respond to motion to dismiss *and* the reasons set forth in defendants' motion papers), *adopted by* 1997 U.S. Dist. LEXIS 16340, at *2 (N.D.N.Y. Oct. 14, 1997) (Pooler, J.); *accord, Carter v. Superintendent Montello,* 95-CV-0989, 1996 U.S. Dist. LEXIS 15072, at *3 (N.D.N.Y. Aug. 27, 1996) (Hurd, M.J.), *adopted by* 983 F.Supp. 595 (N.D.N.Y.1996) (Pooler, J.).

2    *See, e.g., Hernandez,* 2003 U.S. Dist. LEXIS 1625 at *8.

3    Fed.R.Civ.P. 41(b) (providing, in pertinent part, that "[f]or failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant").

4    *See Merker v. Rice,* 649 F.2d 171, 173 (2d Cir.1981).

5    *See Shannon v. GE Co.,* 186 F.3d 186, 193 (2d Cir.1999) (affirming Rule 41[b] dismissal of plaintiff's claims by U.S. District Court for Northern District of New York based on plaintiff's failure to prosecute the action) [citation and internal quotation marks omitted].

6    *See Nita v. Conn. Dep't of Env. Protection,* 16 F.3d 482 (2d Cir.1994).

7    *See, e.g., Robinson v. Middaugh,* 95-CV-0836, 1997 U.S. Dist. LEXIS 13929, at *2-3, 1997 WL 567961 (N.D.N.Y. Sept. 11, 1997) (Pooler, J.) (dismissing action under Fed.R.Civ.P. 41[b] where plaintiff failed to inform the Clerk of his change of address despite having been previously ordered by Court to keep the Clerk advised of such a change); *see also* N.D.N.Y. L.R. 41.2(b) ("Failure to notify the Court of a change of address in accordance with [Local Rule] 10.1(b) may result in the dismissal of any pending action.").

8    It is cases like this one that delay the resolution of other cases, and that contribute to the Second Circuit's dubious distinction as having (among the twelve circuits, including the D.C. Circuit) the longest median time to disposition for prisoner civil rights cases, between 2000 and 2005 (9.8 months, as compared to a national average of 5.7 months). Simply stated, I am unable to afford Plaintiff with further special solicitude without impermissibly burdening the Court and unfairly tipping the scales of justice against Defendant.

9    *Alvarez v. Simmons Market Research Bureau, Inc.,* 839 F.2d 930, 932 (2d Cir.1988) [citations omitted].

10   *Lucas v. Miles,* 84 F.3d 532, 535 (2d Cir.1996) [citations omitted].

---

                                   © 2019 Thomson Reuters. No claim to original U.S. Government Works.

---

**WESTLAW**   © 2019 Thomson Reuters. No claim to original U.S. Government Works.                    4

Travelers Indem. Co. of Illinois v. Hunter Fan Co., Inc., Not Reported in F.Supp.2d (2002)

2002 WL 109567

🚩 KeyCite Yellow Flag - Negative Treatment

Distinguished by [Donald v. Shinn Fu Co. of America,](#) E.D.N.Y.,
September 4, 2002

2002 WL 109567
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

THE TRAVELERS INDEMNITY COMPANY
OF ILLINOIS a/s/o the following entity and
individuals: Milstein Properties, Inc., Helen
Abunasser, Jane Everett, Stella Friedman,
Zehava Mirkin, Arthur Nadaner, Lisa
Pettigrew, and Ziva Ben-Reuvan, Plaintiff,
v.

HUNTER FAN COMPANY, INC., Capitol Lighting
of Paramus, Inc., M. Fortunoff of Westbury Corp.,
and John Does "1" through "5", Defendants.
HUNTER FAN COMPANY,
INC., Third Party Plaintiff,
v.

Lionel HAMPTON, Lincoln Plaza Associates,
Milford Management Corp., One Lincoln
Plaza Condominium, 20 West 64th Street
Associates, Third Party Defendants.

No. 99 CIV 4863 JFK.
|
Jan. 28, 2002.

**Attorneys and Law Firms**

Robinson & Cole LLP, New York, NY, [Michael B.
Golden,](#) for Plaintiff, of counsel.

D'Amato & Lynch, New York, NY, [Lloyd Herman,](#) for
Defendant/Third Party Plaintiff Hunter Fan Co., Inc., of
counsel.

Gulino & Ryan, P.C., New York, NY, [Joseph J. Gulino,](#)
for Defendant Capitol Lighting of Paramus, Inc., of
counsel.

Lambert & Weiss, New York, NY, [Richard Lambert,](#) for
Third Party Defendant Lionel Hampton, of counsel.

Wilson, Elser, Moskowitz, Edelman & Dicker LLP, New
York, NY, [Eugene T. Boule,](#) for Third Party Defendant
Lincoln Plaza Associates, of counsel.

*OPINION and ORDER*

[KEENAN,](#) J.

**\*1** Before this Court are Cross Motions for summary
judgment of Defendant/Third Party Plaintiff Hunter Fan
and Defendant Capitol Lighting of Paramus. Hunter Fan
moves to dismiss the claims of plaintiff The Travelers
Indemnity Company of Illinois and all cross-claims and
counter claims. Capitol Lighting moves to dismiss the
claims of plaintiff Travelers Indemnity Company and
seeks indemnification, costs and attorneys' fees from
Hunter Fan. For the reasons outlined below, the Court
denies all motions.

*Background*

Plaintiff the Travelers Indemnity Company of Illinois
("Travelers") was and still is an Illinois corporation
with its principal place of business located in Hartford,
Connecticut. *See* Am. Compl. ¶ 4. Defendant/Third Party
Plaintiff Hunter Fan, Inc. ("Hunter") was and still is a
Delaware corporation with its principal place of business
located in Memphis, Tennessee. *See id.* ¶ 5. Defendant
Capitol Lighting of Paramus, Inc. ("Capitol") was and
still is a New Jersey corporation with its principal place
of business located at Route 17, Paramus, New Jersey.
*See id.* ¶ 7. Third Party Defendant Lionel Hampton
("Hampton") was, at all relevant times, the lessee and
resident at 20 West 64th Street, Apt. 28K, New York, New
York. *See id.* ¶ 12.

This Court has jurisdiction pursuant to [28 U.S.C. § 1332](#)
because the action is between citizens of different states
and the matter in controversy exceeds the sum of $75,000,
exclusive of interest and costs.

On January 7, 1997, a fire broke out in Hampton's
apartment. The fire allegedly started in Hampton's
bedroom when a halogen lamp fell over onto the bed
setting fire to the bed linens. There is no evidence as to
exactly how the lamp tipped over. The fire consumed
Hampton's apartment and caused damage to the building,
other apartments in the building, and three individuals.
Travelers had issued property insurance policies to the
owners and various tenants of the building, and pursuant

Travelers Indem. Co. of Illinois v. Hunter Fan Co., Inc., Not Reported in F.Supp.2d (2002)

2002 WL 109567

to those policies paid out over one million dollars in claims arising from this fire. Travelers brought this subrogation action against Hunter and Capitol seeking reimbursement with interest of the amounts it had paid to settle these claims.

In its Amended Complaint, Travelers alleges that in or before February 1996, Hunter imported, distributed, and/ or sold certain Halogen Adjustable Arm Torchiere Floor Lamps, model number 20727BL in black and model number 20727WH in white. Travelers alleges that Hunter distributed lamps to Defendant Capitol for resale to the public. Hampton's assistant Caprice Titone ("Titone") had purchased two lamps for Hampton, and purchased the fire-causing lamp (the "Lamp") at Capitol. Hampton's valet Rubin Cox ("Cox") assembled the Lamp. Hampton used both lamps in his bedroom in a position whereby the adjustable arm was horizontal to the floor allowing the shade and bulb to point toward the floor ("the downbridge position"). The first lamp fell over at least once burning a hole into the bedroom carpet. That lamp later broke and Hampton began to use the second lamp. Travelers alleges that the Lamp was defectively designed because, despite representations on the packaging, the Lamp did not meet applicable standards; the Lamp was inherently dangerous because the halogen bulb it required can reach temperatures of up to 970 degrees Fahrenheit; and the instructions furnished with the Lamp failed to warn of the Lamp's instability. Travelers asserts eight claims for relief including causes of action in strict liability, breach of warranty, and negligence. Hunter now moves for summary judgment to dismiss all claims brought by Travelers and all cross-claims and counter claims. Capitol moves to dismiss Travelers' claims and asserts claims for full indemnification and reimbursement of all costs, disbursements and legal fees from Hunter.

## Discussion

**\*2** A motion for summary judgment may be granted under Fed.R.Civ.P. 56 if the entire record demonstrates that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). The moving parties bear the burden of proving that no material facts are in dispute. *Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.3d 54, 57 (2d Cir.1987). When viewing the evidence, the Court must

"assess the record in the light most favorable to the non-movant and ... draw all reasonable inferences in its favor." *Delaware & Hudson Ry. Co. v. Consol. Rail Corp.,* 902 F.2d 174, 177 (2d Cir.1990); *McLee v. Chrysler Corp.,* 109 F.3d 130, 134 (2d Cir.1997). In determining whether a genuine issue of fact has been raised, a court "must resolve all ambiguities and draw all reasonable inferences against the moving party." *Donahue,* 834 F.3d at 57. Courts should "take care not to abort a genuine factual dispute prematurely and thus deprive a litigant of his day in court." *Id.* at 55. Once the movant shows that there are no genuine issues of material fact, the opposing party must produce sufficient evidence to permit a reasonable jury to return a verdict in its favor, identifying "specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 248, 256. If the court finds that there are factual disputes regarding material issues, summary judgment is not appropriate. *See id.* at 249; *see also Repp & K & R Music, Inc. v. Webber,* 132 F.3d 882, 890 (2d Cir.1997) ( "Clearly, the duty of a court on a motion for summary judgment is ... not to decide factual issues. In this regard, the court's task is issue identification, not issue resolution.").

## I. *Hunter's Motion for Summary Judgment*

### A. *Product Identification* [1]

Hunter argues that it cannot be held liable because Travelers cannot prove that Hunter manufactured the Lamp. In a products liability action, the plaintiff bears the burden of proving that the defendant manufactured the product at issue. *See 210 E. 86 [th] St. Corp. v. Combustion Eng'g, Inc.,* 821 F.Supp. 125, 142 (S.D.N.Y.1993). A plaintiff must establish by competent proof that the defendant manufactured and placed the injury-causing defective product into the stream of commerce. *Healey v. Firestone Tire & Rubber Co.,* 87 N.Y.2d 596, 601 (N.Y.1996). The evidence of a manufacturer's identity must establish that it is "reasonably probable, not merely possible or evenly balanced" that defendant was the source of the offending product. *Id.* at 601-02; *Moffett v. Harrison & Burrowes Bridge Contractors, Inc.,* 266 A.D.2d 652, 654 (N.Y.App.Div.1999). A manufacturer's identity may be established by circumstantial evidence, even if the allegedly defective product no longer exists. *Healey,* 87 N.Y.2d at 601. However, speculative or conjectural evidence of a manufacturer's identity is not enough. *Id.* at 602; *see also Franklin v. Krueger Int'l, Inc.,* No. 96

Travelers Indem. Co. of Illinois v. Hunter Fan Co., Inc., Not Reported in F.Supp.2d (2002)

2002 WL 109567

Civ. 2408, 1997 WL 691424, at *4 (S.D.N.Y. Nov. 5, 1997) (finding plaintiff's attorney's mere assertions that the defective chair resembled a chair manufactured by defendant shown in a photograph insufficient evidence).

**\*3** Hunter argues that its Model 20727 lamp is virtually identical to torchiere lamps manufactured or sold by numerous other companies and that there are several differences between Model 20727 and the Lamp, including differences in hole pattern and weight. Hunter claims that the marking "SF Made in Taiwan 211" found on the base of the Lamp is not used on Model 20727 lamps. Hunter claims it provides an Allen wrench and halogen bulb with every lamp and the absence of these items in the Lamp's packaging proves the Lamp was not a Hunter product. Capitol claims not to have sold any lamps during the relevant time period to Titone. Travelers has offered no evidence such as invoices, photos, other documents or deposition testimony to prove the Lamp's purchase thereby connecting it to a store and subsequently to a manufacturer.

Travelers responds that, while there is no receipt for the Lamp's purchase, there is a reimbursement check from Hampton to Titone dated March 1, 1996, indicating that the lamp was purchased before that date. (Titone Trans. at 65) Titone testified that she purchased two lamps for Hampton at Capitol and Fortunoff stores in New Jersey. Travelers argues that because Fortunoff was granted summary judgment and only Capitol remains as a distributor, Capitol sold the Hunter lamp during the relevant time period. Herman Lebersfeld, President of Capitol, testified that Capitol only sold lamps manufactured by Kenroy International, a subsidiary of Hunter. In particular, Capitol sold Hunter Model 20727 lamps during the relevant time period. (Lebersfeld Trans. at 20-22) Capitol cannot account for the sale of every Hunter lamp making it possible that one Model 20727 lamp was purchased by Titone. Travelers submits that it has not been established whether an Allen wrench came with the Lamp. Hampton's valet Rubin Cox assembled the lamp and testified that he does not remember seeing the wrench nor does he remember looking specifically for one. (Cox Trans. at 121) In addition, the physical evidence of the Lamp, including the measurements of almost all of Lamp components, match Hunter exemplar lamps. The diameter of the base of the Lamp and the base of both Hunter exemplar lamps is the same. (Crombie Aff. ¶ 8) The lower and upper support poles of Model 20727 have

the same diameter, length and weight as those of the Lamp. (Crombie Aff. ¶ 10)

Travelers has presented sufficient circumstantial evidence to create an issue of fact regarding whether Hunter was the manufacturer of the Lamp and Capitol was the distributor. Hampton's reimbursement check to Titone establishes a time frame for the Lamp's purchase, during which time Capitol cannot account for all of its sales of Model 20727 lamps. The similarity between the Lamp and Model 20727 has been shown to a "reasonable probability." Travelers has met its burden. Summary judgment is denied.

### B. *Design Defect*

A defectively designed product is one which, when it leaves the seller's hands, is in a condition not reasonably contemplated by the ultimate consumer and is unreasonably dangerous for its intended use. *Voss v. Black & Decker Manuf. Co.,* 59 N.Y.2d 102, 107 (N.Y.1983). A product may be defective when it contains a manufacturing flaw, is defectively designed, or is not accompanied by adequate warnings. *Liriano v. Hobart Corp.,* 92 N.Y.2d 232, 237 (N.Y.1998).

### 1. Design Defect

**\*4** Travelers claims that the Lamp was defectively designed and inherently dangerous because the surface of the halogen bulb reaches temperatures of up to 970 degrees Farenheit, the Lamp does not include a heat shield or other protective device to prevent the bulb from making contact with flammable objects, and the Lamp's design caused it to be inherently unstable and susceptible to tipping over. *See* Am. Compl. ¶¶ 70, 76-77. Hunter argues that the Lamp's design was not faulty, but that Hampton's use of the lamp in the downbridge position was misuse which caused it to tip over and ignite the fire. The claims of design defect and product misuse are thus intertwined. Accordingly, because issues of fact remain on the claim of product misuse, *see infra* Part I.D., the design defect claim must also be submitted to a jury.

### 2. Duty to Warn

Travelers alleges that the instructions that accompanied the Lamp failed to adequately warn consumers of the dangers associated with its heat, lack of a protective shield or screen, and its instability. *See* Am. Compl. ¶¶ 84, 89-90.

Travelers Indem. Co. of Illinois v. Hunter Fan Co., Inc., Not Reported in F.Supp.2d (2002)

2002 WL 109567

Analyzing a failure to warn claim is an intensely fact-specific process which includes assessing the feasibility and difficulty of issuing warnings under the circumstances, the obviousness of the risk from actual use of the product, the knowledge of the particular product user, and proximate cause. *See Anderson v. Hedstrom Corp.,* 76 F.Supp.2d 422, 440 (S.D.N.Y.1999). A manufacturer may not be liable if the risks were sufficiently obvious to the user without a warning. Because of the factual nature of the inquiry, whether a danger is obvious is most often a jury question. *Id.* at 441; *Liriano,* 92 N.Y.2d at 309. Hunter argues that the danger here was obvious to Hampton based on his prior experience with the lamp falling over and burning a hole in the rug. However, courts have cautioned that judges should be wary of taking the issue of liability away from juries, even in situations where the relevant dangers might seem obvious. *Anderson,* 76 F.Supp.2d at 447. Therefore, whether the danger of using the lamp in the downbridge manner was an obvious danger should be determined by a jury.

A manufacturer has a duty to warn against latent dangers resulting from foreseeable uses of its product of which it knew or should have known, as well as a duty to warn of the danger of unintended uses of a product which are reasonably foreseeable. *Liriano,* 92 N.Y.2d at 237. A manufacturer may also be liable for failure to warn of foreseeable misuse. *Id.* at 240. Hunter argues that use in the downbridge position was not foreseeable because the Lamp was not depicted for use as a reading lamp. Hunter's expert Warren testified that proper use of the lamp was indicated by the diagrams, description as "torchiere" and the nature of the assembly. However, no language regarding what Hunter considered the "proper" configuration of its Model 20727 lamp is stated anywhere on the box, or anywhere on Hunter's Assembly Instructions. (Crombie Aff. ¶ 20) Paragraph 6 of Model 20727's Assembly Instructions states: "[t]he set screw is used to limit the movement of the arms. Raise the arm to a vertical position. Use the Allen wrench provided to turn in the set screw. To adjust the position of the arm assembly, loosen the adjusting handle, position the arms to the desired angle, then tighten the adjusting handle." Hunter's instructions allowed for adjustment to any position. The instructions do not warn against using the lamp in the downbridge position. Because the adequacy of warnings furnished by a manufacturer to avoid any foreseeable misuse by a consumer presents questions of fact, *Johnson v. Johnson Chem. Co., Inc.,*

588 N.Y.S .2d 607, 610 (N.Y.App.Div.1992), summary judgment is denied on this ground.

**\*5** Additionally, there is an issue of fact as to proximate cause. Travelers must show that the presence of a warning would have caused Hampton and his staff to change their behavior. Where "a warning would not have given [a user] any better knowledge of the [product's's] danger than he already had from prior use or than was readily discernible from observation, the absence of a warning could not have proximately caused his injuries." *Barnes v. Pine Tree Mach.,* 261 A.D.2d 295, 295-96 (N.Y.App.Div.1999). It is unknown whether, if Hunter had issued a warning against doing so, Hampton and his staff would not have used the lamp in the downbridge position. Hunter argues that the warning would not have had an effect because Hampton's prior experience with the first lamp falling over and burning the rug did not cause him to change his behavior. Hampton argues that because a serious fire did not result from these previous incidents, he was not aware of the possible damage. Further, because the first lamp ultimately broke, Hampton and his staff could have concluded that it fell over because it was always broken. Hunter contends that Cox's testimony regarding how similar he believed the two lamps to be shows that Hampton and his staff were aware of the dangers. (Cox. Trans. at 130) Therefore, there is an issue of fact as to what effect a warning would have had on the behavior of Hampton and his staff. Summary judgment is denied.

C. *Subsequent modification*

Hunter argues that it cannot be held liable because Cox improperly assembled the Lamp by not using the Allen wrench it claims it provides with every Model 20727 lamp. Hunter argues that using the lamp in the downbridge position would not have been possible had the setscrews been properly tightened with the Allen wrench. Hunter argues that this faulty assembly and use of the lamp in as unintended manner constituted a subsequent modification to the lamp.

When a consumer makes a subsequent modification which *substantially alters* the product and is the proximate cause of plaintiff's injuries, the manufacturer cannot be held liable. *Robinson v. Reed-Prentice,* 49 N.Y.2d 471, 485 (N.Y.1980) (emphasis added). A user's substantial modifications of a product that render a safe product defective are not the manufacturer's responsibility. *Id.* at 479. Material alterations that destroy the "functional

Travelers Indem. Co. of Illinois v. Hunter Fan Co., Inc., Not Reported in F.Supp.2d (2002)

2002 WL 109567

utility of a key safety feature" are not a manufacturer's responsibility. *Id.* at 480. When a product's design incorporates a certain safety feature, a manufacturer may be held liable under a design defect theory even though the removal of that safety feature caused the accident, provided the product was purposefully manufactured to permit its use without the safety guard. *Lopez v. Precision Papers,* 67 N.Y.2d 871, 875 (N.Y.1986).

Hunter claims that the setscrews were a safety device; however, Hunter did not submit evidence that the setscrew was intended or marked as a safety device. There were no warnings or instructions regarding using the lamp in a particular manner. Further, it is unclear whether the Allen wrench was in the box of the lamp Hampton purchased allowing for the recommended assembly. Therefore, issues of fact remain regarding substantial modification and summary judgment is denied.

### D. *Product Misuse*

 **\*6** Hunter claims that Hampton's use of the Lamp in the downbridge position constitutes misuse and absolves Hunter of liability. A manufacturer may be liable for failing to warn of foreseeable misuse of its product. *Liriano,* 700 N.E.2d at 304. Foreseeability requires knowledge of a certain misuse by the particular defendant or in the industry generally. *See Amatulli v. Delhi Constr. Corp.,* 77 N.Y.2d 525, 533 (N.Y.1991). Without evidence of knowledge, a defendant will not be held liable. *Id.* However, even when a consumer admits misuse, a question of fact remains regarding liability. The general rule is that there may be liability in such cases when it is proved that the abnormal use was reasonably foreseeable. *See Johnson Chem. Co.,* 588 N.Y.S.2d at 610, whether a particular misuse is reasonably foreseeable is ordinarily a jury question. *Id.* When a jury might conclude that plaintiff misused the product in a way which ought to have been foreseen by the defendants, an issue of fact has been demonstrated as to whether the warnings furnished by the defendant manufacturer were adequate. *Id.* Here, whether Hampton's use of the lamp was foreseeable and required a warning is a question of fact for the jury. Accordingly, summary judgment is denied.

### E. *Breach of Warranty*

Travelers has conceded to Hunter's arguments regarding the warranty claims. Accordingly, those claims are dismissed.

### F. *Capitol's Motion*

Capitol moved for summary judgment adopting Hunter's arguments on product identification and defectiveness, and making a separate argument on Travelers' negligence claim. Additionally, Capitol seeks indemnification and reimbursement from Hunter. In response, Hunter argues first that Capitol violated Local Civil Rule 56.1 by not submitting a sworn statement of material facts. Local Civil Rule 56.1 requires there "be annexed to the notice of motion [for summary judgment] a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried. Failure to submit such a statement may constitute grounds for denial of the motion." Local Civ. R. 56.1(a). The rule further states that "[e]ach statement of material fact by a movant or opponent must be followed by citation to evidence which would be admissible, set forth as required by Federal Rule of Civil Procedure 56(e)." Local Civ. R. 56.1(d). Capitol submitted only the Declaration of its counsel Joseph J. Gulino in support of its motion which makes references to exhibits in two paragraphs when referring to its motion papers and to Lebersfeld's affidavit. (Gulino Decl. ¶¶ 5, 9)

Failure to comply with the requirements of Local Civil Rule 56.1 constitutes grounds for denial of a motion. *MTV Networks v. Lane,* 998 F.Supp. 390, 393 (S.D.N.Y.1998) (denying defendant's motion for summary judgment because his papers failed to establish the absence of a factual dispute); *see also Rossi v. New York City Police Dep't,* No. 94 Civ. 5113(JFK), 1998 WL 65999, at \*4 (S.D.N.Y. Feb. 17, 1998) (denying plaintiff's motion for summary judgment for failure to comply with Local Civil Rule 56.1 by not annexing a short and concise statement of material facts). The moving party's failure to comply with the Rule is particularly troubling because the moving party bears the burden of demonstrating that there is no genuine issue of material fact. *Reiss, et al. v. County of Rockland,* No. 84 Civ.1906, 1985 WL 426, at \*1 (S.D.N.Y. Mar. 19, 1985) (denying summary judgment where movant submitted no statement at all and granting leave to re-file in compliance with the rule). A court may decide not to consider any statements made by a party in their Rule 56.1 statement that are not supported by a citation to the record. *See Shepard v. Frontier Communication Servs.,* 92 F.Supp.2d 279, 284 (S.D.N.Y.2000) (granting defendants' motion for

Travelers Indem. Co. of Illinois v. Hunter Fan Co., Inc., Not Reported in F.Supp.2d (2002)

2002 WL 109567

summary judgment where several statements of disputed facts were not supported by a citation to the record).

**\*7** A district court has broad discretion whether to overlook a party's failure to comply with local court rules. *Holtz v. Rockefelier & Co., Inc.,* 258 F.3d 62, 73 (2d Cir.2001). While this Court could deny Capitol's motion on the basis of Capitol's failure to comply with Local Civil Rule 56.1, there is no need to do so on that basis as Capitol's motion is denied on other grounds.

A. *Negligence*

Capitol argues that it is not liable in negligence because the lamp was sold in a sealed container and no alterations were made to the lamp. Under New York law, a retailer can be held liable in negligence if it fails to detect a dangerous condition that it could have discovered during a normal inspection while the product was in its possession. *See McLaughlin v. Mine Safety Appliances Co.,* 11 N.Y.2d 62, 68 (1962); *Schwartz v. Macrose Lumber & Trim Co.,* 270 N.Y.S.2d 875, 886-87 (N.Y.Sup.Ct.1966). A seller has a duty to give reasonable warnings of known latent dangers. *McLaughlin,* 11 N.Y.2d at 68-69. However, a retailer cannot be held liable for injuries sustained from the contents of a sealed product even though a testimony have uncovered a potential danger; no such obligation is imposed on a retailer. *Brownstone v. Times Square Stage Lighting Co., Inc.,* 333 N.Y.S.2d 781, 782 (N.Y.App.Div.1972); *Alfieri v. Cabot Corp.,* 235 N.Y.S.2d 753, 757 (N.Y.App.Div.1962), *aff'd* 13 N.Y.2d 1027 (N.Y.1963).

Lebersfeld testified that Capitol assembled several of its lamps, including Model 20727, as floor models for display and sale to customers. (Lebersfeld Trans. at 149-50, 160) Titone also testified that the lamps she purchased were on display in the store showrooms (Titone Trans. at p. 21, 38, 92) and that the salesperson demonstrated using the lamp with the bulb tilted toward either the ceiling or floor. (*Id.* at 24) Capitol claims the packages were sealed and it had no duty to inspect them. No evidence has been submitted regarding whether Capitol inspected the display lamps. An inspection of those lamps may have revealed a danger. Therefore an issue of fact remains as to whether Capitol met its duty to inspect. Summary judgment is denied.

B. *Indemnification and Reimbursement*

Capitol argues that it is entitled to indemnification and reimbursement for fees, costs and disbursements from Hunter. Capitol argued that it engaged in no wrongdoing and full responsibility lies with Hunter. Capitol's motion for indemnification is premature.

Indemnity obligations can be created by contract or implied in law. Here there was no contractual agreement; the issue then is whether Capitol is entitled to common law indemnification. The right to indemnification may be implied by law to prevent an unfair result or the unjust enrichment of one party at the expense of another. *Cochrane v. Warwick Assoc., Inc.,* 723 N.Y.S.2d 506, 508 (N.Y.App.Div.2001). The right of common law indemnification belongs to parties found vicariously liable without proof of any negligence or active fault on their own part. *Colrer v. K Mart Corp.,* 709 N.Y.S.2d 758, 759 (N.Y.App.Div.2000). A finding that Capitol was negligent would preclude an indemnity award. Because an issue of fact remains as to Capitol's negligence, this Court cannot at this time find Hunter liable in indemnification. Capitol's motion is denied.

**\*8** Capitol has moved to recover attorney's fees and costs incurred during this litigation. The universal rule is not to allow a litigant to recover damages for the amounts incurred in the successful prosecution or defense of its rights. *Mighty Midgets Inc. v. Centennial Ins. Co.,* 47 N.Y.2d 12, 21-22 (N.Y.1979). Under the American Rule, no attorneys' fees are recoverable absent express statutory authority for such an award. *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 616, 561-62 (1986); *Jane Doe v. Karadzic,* No. 93 Civ. 0878, 2001 WL 986545, at \*2 (S.D.N.Y. Aug. 28, 2001). Here this is no statutory authority for an award. Therefore, Capitol's motion is denied.

*Conclusion*

For the reasons outlined above, Hunter's and Capitol's Motions for summary Judgment are hereby denied. Capitol's motion for indemnification, and reimbursement for costs and fees is denied.

The parties are hereby given a Ready for Trial date of May 13, 2002. A copy of this Court's Pre-trial Requirements is forwarded to counsel with this Opinion.

**Travelers Indem. Co. of Illinois v. Hunter Fan Co., Inc., Not Reported in F.Supp.2d (2002)**

2002 WL 109567

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2002 WL 109567

Footnotes

1    Capitol has adopted Hunter's arguments in its cross-motion for summary judgment. Therefore all references to and decisions made based on arguments made by Hunter will apply to Capitol.

**End of Document**                                          © 2019 Thomson Reuters. No claim to original U.S. Government Works.