UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

BARRY HAYWOOD, JR.,

                           **Plaintiff,**

   vs.                                                  9:18-CV-01097
                                                             (MAD/DEP)

**JEFF FULLER,** *Corrections Officer, Mid-State Correctional Facility*; **JESSICA DENNY,** *Offender Rehabilitation Coordinator, Mid-State Correctional Facility*; **ROBERT HART,** *Sergeant, Mid-State Correctional Facility*,
                               **Defendants.**
_____

APPEARANCES:                              OF COUNSEL:

**BARRY HAYWOOD, JR.**
**18-R-1006**
Mid-State Correctional Facility
P.O. Box 2500
Marcy, New York 13403
Plaintiff *pro se*

**OFFICE OF THE NEW YORK**          **NICHOLAS LUKE ZAPP, AAG**
**STATE ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorney for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

     Plaintiff brought this action pursuant to 42 U.S.C. § 1983, alleging violations of his civil rights while he was an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). *See generally* Dkt. No. 1. The complaint alleges claims based on free speech, due process, excessive force, failure to protect, and denial of medical treatment. *See* Dkt. No. 1 at 5. Only Plaintiff's Eighth Amendment claims of excessive force and

failure to protect survived initial review. *See* Dkt. No. 8 at 19-20. These claims were filed against Defendants Fuller, Hart, and Denny, employees of DOCCS. *See id*; Dkt. No. 1 at 1.

On March 15, 2019, Defendants moved for summary judgment as to the remaining Eighth Amendment claims on the ground that Plaintiff failed to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act ("PLRA"). *See* Dkt. No. 17-1 at 3. In an April 16, 2019 Order, Report, and Recommendation, Magistrate Judge David E. Peebles recommended that Defendants' motion for summary judgment be granted and that Plaintiff's complaint be dismissed in its entirety on grounds of (1) failure to exhaust administrative remedies and (2) failure to comply with the procedural rules of the court. *See* Dkt. No. 22 at 2.

## II. BACKGROUND

Plaintiff was an inmate at Mid-State Correctional Facility ("Mid-State") at the time he filed his complaint on September 13, 2018. *See* Dkt. No. 1 at 1, 2, 5. Plaintiff alleges that, on August 21, 2018 at approximately 1:30 p.m., Defendant Fuller and Defendant Hart assaulted him and Defendant Denny failed to prevent the assault. *See* Dkt. No. 1 at 5. According to the complaint, Defendants Fuller and Hart "threw" Plaintiff onto a wall. *See id*. Defendant Fuller kicked Plaintiff's legs out from under him, causing Plaintiff to strike his head against a wall and lose consciousness. *See id*. When Plaintiff regained consciousness, Defendant Fuller was kicking him in the groin area. *See id*. After the assault, Plaintiff claims that he was taken to receive medical treatment. *See id*.

On August 23, 2018, Plaintiff filed a grievance regarding the alleged assault at Mid-State through the DOCCS Inmate Grievance Program ("IGP"). *See* Dkt. No. 17-3 at ¶ 10 and exh. B. Due to the nature of Plaintiff's grievance, it was forwarded directly to the Mid-State Superintendent for review and response. *See id*. at ¶ 11. The Superintendent denied Plaintiff's

grievance in a written decision dated November 29, 2018. *See id*. at ¶ 11 and exh. C. Plaintiff did not appeal the Superintendent's decision. *See id*. at ¶ 13; Dkt. No. 17-4 at ¶ 13 and exh. A. Plaintiff had knowledge of the proper procedure of the IGP, as he attended the Mid-State orientation program, detailing the IGP procedures, and also received a letter from the Assistant Director of the IGP, reminding Plaintiff of those procedures after the filing of his grievance. *See* Dkt. No. 17-3 at ¶ 4; Dkt. No. 17-4 at ¶ 14 and exh. B. In addition, DOCCS Directive No. 4040 and N.Y.C.R.R. Title 7 provide information about the grievance process and are available in Mid-State's law library. *See* Dkt. No. 17-3 at ¶ 4.

In its initial decision dated November 27, 2018, the Court instructed Plaintiff "to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any changes in his address; their failure to do so will result in the dismissal of his action." Dkt. No. 8 at 20 (emphasis omitted). Plaintiff appears to have been released from confinement at Mid-State on February 28, 2019. *See* Dkt. No. 17-1 at 3 n.1. Since such time, the Court has attempted to notify Plaintiff via mail at his Mid-State address with respect to Defendants' motion for summary judgment, a separate text order of the Court, and the Order, Report, and Recommendation made by Magistrate Judge Peebles. *See* Dkt. Nos. 20, 21, 23. Each notice has been returned as undeliverable. *See id*.

Currently before the Court is Magistrate Judge Peebles' April 16, 2019 Order, Report, and Recommendation. No objections have been filed.

### III. DISCUSSION

**A.  Standard of Review**

When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). However,

3

when a party files "[g]eneral or conclusory objections, or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations for clear error. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Id*. at 36-37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleadings. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513-14, 91 L. Ed. 2d 202 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in

when a party files "[g]eneral or conclusory objections, or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations for clear error. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Id*. at 36-37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleadings. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513-14, 91 L. Ed. 2d 202 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in

when a party files "[g]eneral or conclusory objections, or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations for clear error. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Id*. at 36-37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleadings. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513-14, 91 L. Ed. 2d 202 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in

the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

In reviewing a *pro se* case, the court "must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972)) (other citations omitted). The Second Circuit has opined that the court is obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). However, this does not mean that a *pro se* litigant is excused from following the procedural requirements of summary judgment. *See id.* (citing *Showers v. Eastmond*, 00 CIV. 3725, 2001 WL 527484, at *2 (S.D.N.Y. May 16, 2001)). Specifically, "a *pro se* party's 'bald assertion,' completely unsupported by evidence" is not sufficient to overcome a motion for summary judgment. *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

**B.     Plaintiff Failed To Exhaust Administrative Remedies in Violation of the PLRA**

The PLRA states that "[no] action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement applies to all suits brought by inmates regarding aspects of prison life. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002). Inmates must exhaust all available administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *See Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004), *abrogated on other grounds by Ross v. Blake*, 136 S. Ct. 1850 (2016). The failure to

5

exhaust is an affirmative defense that must be raised by the defendants and, as such, it is the defendants' burden to establish that the plaintiff failed to meet the exhaustion requirements. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules. *See Jones*, 549 U.S. at 218-19 (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)). In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. *See Woodford*, 548 U.S. at 90-103.

New York State has a three-step administrative review process. First, a grievance is submitted to the IGRC which reviews and investigates the formal complaint before issuing a written determination. *See* 7 N.Y.C.R.R. § 701.5(b). Second, an adverse decision by the IGRC may be appealed to the Superintendent of the Facility. *See id*. at § 701.5(c). Third, an adverse decision by the Superintendent may be appealed to the CORC, which makes the final determination within the administrative review process. *See id.* at § 701.5(d).

If an inmate's grievance contains issues of employee harassment, then the grievance bypasses the first step of IGRC review and is forwarded directly to the Superintendent. *See id*. at § 701.8(b)(c). The Superintendent must render a written decision within twenty-five days of receipt of the grievance. *See id*. at § 701.8(g). An inmate may appeal such a decision to the CORC within seven days of its receipt. *See id.* at § 701.8(h).

If all three levels of review are exhausted, then the prisoner may seek relief in federal court pursuant to section 1983. *See Bridgeforth v. DSP Bartlett*, 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010) (citing *Porter*, 534 U.S. at 524); *Singh v. Goord*, 520 F. Supp. 2d 487, 495-96 (S.D.N.Y. 2007) (quoting *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004)).

To the extent a civil rights claim must be exhausted by the grievance process, completion of the three-tiered process, through and including a final decision by the CORC, must be completed before an action asserting that claim may be filed in court. *See*, *e.g.*, *Casey v. Brockley*, No. 9:13-CV-1271, 2015 WL 8008728, *5 (N.D.N.Y. Nov. 9, 2015) ("Receiving a decision from CORC *after* commencing litigation does not satisfy PLRA's requirement that administrative remedies be exhausted *before* filing suit, and any claim not exhausted prior to commencement of the suit must be dismissed without prejudice") (citing *Neal v. Goord*, 267 F.3d 116, 122-23 (2d Cir. 2001), *overruled on other grounds*, *Porter v. Nussle*, 534 U.S. 516 (2002)); *Rodriguez v. Rosner*, No. 12-CV-958, 2012 WL 7160117, *8 (N.D.N.Y. Dec. 5, 2012). "[A] post-exhaustion amendment of the complaint cannot cure an exhaustion defect existing at the time the action was commenced." *Guillory v. Haywood*, No. 9:13-CV-1564, 2015 WL 268933, *11 (N.D.N.Y. Jan. 21, 2015) (citing *Neal*, 267 F.3d at 122) (other citation omitted).

Although administrative remedies generally must be exhausted, a prisoner need not exhaust remedies if they are not "available." *Ross*, 136 S. Ct. at 1855. "First, an administrative remedy may be unavailable when 'it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates.'" *Williams*, 829 F.3d at 123 (quoting *Ross*, 136 S. Ct. at 1859). "Second, 'an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use.'" *Id.* (quoting *Ross*, 136 S. Ct. at 1859). "In other words, 'some mechanism exists to provide relief, but no ordinary prisoner can discern or

7

navigate it.'" *Id.* at 123-24 (quoting *Ross*, 136 S. Ct. at 1859). "Third, an administrative remedy may be unavailable 'when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Id.* at 124 (quoting *Ross*, 136 S. Ct. at 1860).

In the present matter, Magistrate Judge Peebles correctly found that Plaintiff failed to exhaust available administrative remedies through the proper channels of the IGP. *See* Dkt. No. 22 at 17. Plaintiff filed a grievance on August 23, 2018 concerning the alleged assault by Defendants. *See* Dkt. No. 17-3 at ¶ 10 and exh. B. Since Plaintiff's grievance contained allegations of employee harassment, it was forwarded directly to Mid-State's Superintendent for review. *See* 7 N.Y.C.R.R. § 701.8(b)(c); Dkt. No. 17-3 at ¶ 11. The Superintendent denied Plaintiff's grievance in a written decision dated November 29, 2018. *See* Dkt. No. 17-3 at ¶ 11 and exh. C. Plaintiff did not appeal the Superintendent's decision to the CORC. *See id*. at ¶ 13; Dkt. No. 17-4 at ¶ 13 and exh. C. Not only did Plaintiff fail to appeal to the CORC, Plaintiff filed this action *prior* to the twenty-five day time frame granted to the Mid-State Superintendent for response. *See* 7 N.Y.C.R.R. § 701.8(g); Dkt. No. 17-3 at exh. B; *see generally* Dkt. No. 1. Plaintiff did not complete the requisite three steps of the IGP and accordingly, failed to exhaust administrative remedies in violation of the PLRA. *See* 42 U.S.C. § 1997e(a); Dkt. No. 17-3 at ¶ 13; Dkt. No. 17-4 at ¶ 13 and exh. A; *see*, *e.g.*, *Casey*, 2015 WL 8008728, at *5 (citing *Neal*, 267 F.3d at 122-23); *Rodriguez*, 2012 WL 7160117, at *8 (N.D.N.Y. Dec. 5, 2012). Based on the foregoing, the Court finds that no reasonable jury could find that Plaintiff exhausted administrative remedies and, therefore, Magistrate Judge Peebles correctly recommended that the Court grant Defendants' motion for summary judgment.

**C.     Plaintiff Failed to Update His Address in Violation of the Local Rules of the Court**

Rule 41(b) of the Federal Rules of Civil Procedure provides that a court may, in its discretion, dismiss an action based upon the failure of a plaintiff to prosecute the action, or to comply with the procedural rules or orders of the court. *See* Fed. R. Civ. P. 41(b);[1] *see also Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962) (upholding the district court's inherent authority to dismiss an action *sua sponte* for failure to prosecute, notwithstanding the language of Rule 41(b) which appears to permit such action only on motion of the defendant). This power to dismiss may be exercised when necessary to achieve orderly and expeditious disposition of cases. *See Freeman v. Lundrigan*, No. 6:95-CV-1190, 1996 WL 481534, *1 (N.D.N.Y. Aug. 22, 1996).

In deciding whether to grant dismissal pursuant to Rule 41(b) for failure to comply with an order or the court's procedural rules, the court must consider five factors: (1) the duration of the plaintiff's failure to comply; (2) whether the plaintiff was on notice that failure to comply would result in dismissal; (3) whether the defendant is likely to be prejudiced by further delay in the proceedings; (4) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard; and (5) whether the judge has adequately considered a sanction less drastic than dismissal. *See Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996). In general, "no factor is dispositive in determining whether dismissal is warranted." *See Spencer v. Doe*, 139 F.3d 107, 113 (2d Cir. 1998). Dismissal pursuant to Rule 41(b) for lack of prosecution or for failure to comply with an order of the court is a matter committed to the discretion of the district court. *See Link*, 370 U.S. at 633. The court should exercise this discretion with caution and restraint because dismissal is a harsh remedy, especially when invoked against a *pro se* plaintiff. *See Baptiste v. Sommers*, 768 F.3d 212, 216-17 (2d Cir. 2014).

---

[1] It is well-settled that the term "these rules" in Fed. R. Civ. P. 41(b) refers not only to the Federal Rules of Civil Procedure but also to the local rules of practice for a district court. *See Tylicki v. Ryan*, 244 F.R.D. 146, 147 (N.D.N.Y. 2006).

In the present matter, Magistrate Judge Peebles correctly found that Plaintiff's action is subject to dismissal due to his failure to update his address in violation of the Local Rules of the Court. *See* Fed. R. Civ. P. 41(b). The Local Rules of the Court require that "[a]ll…*pro se* litigants must immediately notify the Court of any change of address." N.D.N.Y. L.R. 10.1(c)(2) (emphasis omitted). The Court expressly informed Plaintiff of this requirement in its initial decision and order dated November 27, 2018. *See* Dkt. No. 8 at 20 ("Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any changes in his address; their failure to do so will result in the dismissal of his action" (emphasis omitted )). Plaintiff appears to have been released from Mid-State on February 28, 2019. *See* Dkt. No. 17-1 at 3 n.1. Plaintiff failed to update his address with the Court following his release and all subsequent notices have been returned as undeliverable. *See* Dkt. Nos. 20, 21, 23.

In his Order, Report, and Recommendation, Magistrate Judge Peebles correctly weighed the aforementioned factors in consideration of a dismissal under Rule 41(b) when he found, "the need to alleviate congestion on the court's docket and defendants' interest in defending against the claims asserted by plaintiff outweigh his right to receive a further opportunity to be heard in this matter. As required, I have considered less-drastic sanctions, but reject them as ineffective." Dkt. No. 22 at 20-21; s*ee Lucas*, 84 F.3d at 535 (2d Cir. 1996). Therefore, dismissal pursuant to Rule 41(b) is proper. *See Link*, 370 U.S. at 633.

## IV. CONCLUSION

After carefully considering Magistrate Judge Peebles' Order, Report, and Recommendation, the entire record in this matter, the parties' submissions, and the applicable law, and for the reasons stated herein, the Court hereby,

10

**ORDERS** that Magistrate Judge Peebles' Order, Report, and Recommendation (Dkt. No. 22) is **APPROVED** and **ADOPTED in its entirety**; and the Court further

**ORDERS** that Defendants' Motion for Summary Judgment (Dkt. No. 17) is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's complaint is **DISMISSED with prejudice**; and the Court further

**ORDERS** that the Clerk shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: June 12, 2019
       Albany, New York

Mae A. D'Agostino
U.S. District Judge